UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OSVALDO CORREA-MARTINEZ,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>DR. AMAR SHEKIR, et al.,<br><br>　　　　　　　　　　Defendants. | Civ. Action No. 21-11075 (JXN) (LDW)<br><br>**OPINION** |

**NEALS, District Judge:**

　　Plaintiff, Osvaldo Correa-Martinez, is a prisoner at Northern State Prison in Newark, New Jersey. He is proceeding *pro se* with a civil rights complaint alleging claims under 42 U.S.C. § 1983. (*See* Compl., ECF No. 1.) The Court has screened the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A to determine whether the Court should dismiss it as frivolous or malicious, for failure to state a claim upon which the Court may grant relief, or because it seeks monetary relief from a defendant who is immune from suit. For the reasons set forth below, Plaintiff's Complaint is **DISMISSED with prejudice** as to Saint Francis Hospital, Rutgers Health Care, and Northern State Prison, and **DISMISSED without prejudice** as to Dr. Amar Shekir.

**I.　BACKGROUND**

　　The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion. This case arises from permanent hand injuries sustained by Plaintiff in connection with surgery conducted by Dr. Shekir at Saint Francis Hospital. Plaintiff names Dr. Shekir, Saint Francis Hospital, Rutgers Health Care, and Northern State Prison as defendants.

Plaintiff alleges that Dr. Shekir negligently performed surgery on Plaintiff's right hand knowing that it had no chance of success. (*See* ECF No. 1, at 6; ECF No. 1-1, at 2.) Apparently, the surgery caused permanent damage to Plaintiff's hand. (*See id.* at 6–7.)

According to Plaintiff, Dr. Shekir told him in a video conference after the surgery that he "can ask for no more because you are a[n] inmate." (*See id.* at 5.) Nevertheless, Dr. Shekir asked Plaintiff if he wanted to do the surgery again, and, when Plaintiff asked Dr. Shekir about the probability percentage that his hand would get better, Dr. Shekir indicated zero percent. (*See id.* at 6–7.)

Plaintiff names Saint Francis Hospital and Rutgers Health Care as defendants because Dr. Shekir performed the surgery at San Francis Hospital and Rutgers Health Care is the hospital's insurance provider. (*See id.* at 5.) Plaintiff further names Northern State Prison as a defendant because he was incarcerated at the prison when he had the surgery. (*See id.*) Plaintiff seeks compensatory damages in the amount of $20,000,000. (*See id.* at 7.)

## II.   **LEGAL STANDARD**

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis, see* 28 U.S.C. § 1915(e)(2)(B), or seeks redress against a governmental employee or entity. *See* 28 U.S.C. § 1915A(a). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915(e)(2)(B), 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to Sections 1915(e)(2)(B) or 1915A is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012);

2

*Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008). A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

Moreover, to survive screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III. DISCUSSION

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. (*See* ECF No. 1, at 2.) "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). Accordingly, a plaintiff asserting a Section 1983 claim must allege that (1) a "person" (2) acted "under color of state law" (3) to deprive Plaintiff of a constitutional or federal right. *See id.* The Court liberally construes the Complaint as asserting Eighth Amendment inadequate medical care claims.[1]

---

[1] To the extent the Complaint asserts state law negligence and medical malpractice claims, this Court lacks diversity jurisdiction to hear the claims because complete diversity of citizenship is

3

### A. Persons amenable to suit under Section 1983

The Complaint asserts Section 1983 claims against Northern State Prison, Saint Francis Hospital and Rutgers Health Care, among others. As explained below, the Court will dismiss those claims with prejudice because those Defendants are not "persons" subject to liability under Section 1983.

Section 1983 imposes liability on "[e]very *person* who, under color of [State law] . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). To be liable under Section 1983, therefore, a defendant must be a "person." *See id.* The law is well-established that state prisons and hospitals are not "persons" subject to liability under Section 1983. *See Murphy v. Ancora Psychiatric Hosp.*, No. 15-8410, 2016 WL 3647994, at *2 (D.N.J. July 8, 2016) (dismissing Section 1983 claims against state-run hospital because the hospital was not a "person" within the meaning of Section 1983); *Williams v. SCO*, No. 15-5609, 2015 WL 5110913, at *2 (D.N.J. Aug. 31, 2015) ("Northern State Prison is not a 'person' for purposes of § 1983 litigation.").

Here, Plaintiff's claims against Northern State Prison and Saint Francis Hospital cannot proceed because neither meets the legal definition of a "person" subject to liability under Section 1983. *See Murphy*, 2016 WL 3647994, at *2; *Williams*, 2015 WL 5110913, at *2. Similarly, Plaintiff's claims against Rutgers Health Care also fail because it is not a "person" within the

---

not apparent from the Complaint, *see Chem. Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 177 F.3d 220, 222 n.13 (3d Cir. 1999) (noting that the plaintiff has the burden of pleading jurisdiction and must state each party's citizenship so that compete diversity can be confirmed), and this Court declines to exercise supplemental jurisdiction over the claims. *See* 28 U.S.C. § 1367(c)(3).

4

meaning of Section 1983. The Court, therefore, must dismiss Plaintiff's Section 1983 claims against Northern State Prison, Saint Francis Hospital, and Rutgers Health Care with prejudice.

### B. State Actor Requirement

The Complaint also asserts a Section 1983 claim against Dr. Shekir. For the reasons below, the Court will dismiss Plaintiff's claims against Dr. Shekir because Plaintiff did not plead or allege facts suggesting that Dr. Shekir is a state actor.

As noted above, to state a claim under Section 1983, a plaintiff must show that a person "acting under color of law" deprived him of a constitutional or federal right. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A private party acts "under color of state law" for the purpose of Section 1983 liability where: (1) it has exercised powers that are traditionally the exclusive prerogative of the State; (2) the State and the private party act in concert or jointly to deprive a plaintiff of his rights; (3) the State has permitted a private party to substitute his judgment for that of the State; or (4) the private party and the State have a symbiotic relationship as joint participants in the unconstitutional activity. *See Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995); *Cruz v. Donnelly*, 727 F.2d 79, 81–82 (3d. Cir. 1984).

Here, Dr. Shekir appears to be a private party, and Plaintiff did not allege or plead sufficient facts upon which the Court may infer that that Dr. Shekir acted under the color of state law. (*See* ECF No. 1.) For example, Plaintiff does not allege or plead facts suggesting that Dr. Shekir or his employer, Saint Francis Hospital, acted in concert or jointly with the State of New Jersey to deprive him of his rights or that New Jersey authorized and obliged Dr. Shekir to treat prison inmates. (*See id.*) Accordingly, Plaintiff did not plead an essential element of his Section 1983 claim against Dr. Shekir, *see West*, 487 U.S. at 48–49, and the Court will dismiss it without prejudice because it lacks an arguable basis in the law. *See Turner v. Children's Hosp.*, 378 F. App'x 124, 126 (3d Cir.

5

2010) (affirming district court's order dismissing *sua sponte* a Section 1983 complaint as legally frivolous where the complaint lacked allegations permitting the district court to find that the defendant hospital was a state actor).

### C. Inadequate medical care claims

Even if Plaintiff could allege facts suggesting that Dr. Shekir is a state actor, Plaintiff nevertheless fails to state a claim against him. The Court provides below an alternative basis for dismissing Plaintiff's inadequate medical care claim against Dr. Shekir without prejudice.

The Eighth Amendment's cruel and unusual punishment clause allows prisoners to sue prison officials who are deliberately indifferent to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–08 (1976). To state an inadequate medical care claim, an inmate must allege facts showing (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.*

A medical need is "serious" if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). The seriousness of the inmate's medical need may also be determined by reference to the effect of denying a particular treatment. *Id.* A condition is serious if denial of a particular treatment would cause death, degeneration, or extreme pain. *See id.*

Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in *criminal* law." *See Nicini*, 212 F.3d at 811 (emphasis added). To be found liable, the prison official must know of and disregard an excessive risk to inmate health or safety; "the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S.

825, 836–37 (1994). A plaintiff, therefore, must allege and plead enough factual matter to allow the court to infer reasonably that the official was subjectively aware of a substantial risk of serious harm and that the official disregarded that risk. *See id.*; *Iqbal*, 556 U.S. at 678.

Courts in the Third Circuit have found deliberate indifference in a variety of contexts, including where: (1) prison authorities deny reasonable requests for medical treatment; (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it; (3) necessary medical treatment is delayed for non-medical reasons; and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017). Regardless of the context, however, the defendant must have, and the plaintiff must allege, the sufficiently culpable state of mind noted above. *Farmer*, 511 U.S. at 838 ("[O]ur cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment.").

Here, the Complaint arguably satisfies the "serious medical need" prong. Although the Complaint provides scant details of the circumstances surrounding Plaintiff's surgery, it appears that Dr. Shekir deemed surgery necessary to treat Plaintiff's hand. (*See* ECF No. 1, at 5–7.) Such allegations are sufficient to demonstrate a serious medical need. *See Monmouth County*, 834 F.2d at 347.

The Complaint, however, fails to satisfy the "deliberate indifference' prong. Plaintiff fails to allege that Dr. Shekir denied, refused to provide, delayed, or otherwise prevented Plaintiff from receiving treatment. (*See* ECF No. 1, at 5–7.) Moreover, Plaintiff fails to allege or plead facts that suggest that Dr. Shekir had the requisite mental state, *i.e.*, that he was subjectively aware of a substantial risk of serious harm to Plaintiff by performing the surgery. (*See id.*) Although Plaintiff alleges that Dr. Shekir knew there was no hope for his hand and that even a second surgery would

7

not make his hand better, Plaintiff does not allege that Dr. Shekir knew of a substantial risk of harm to Plaintiff by performing the surgery. (*See id.*) Plaintiff, therefore, does not state an inadequate care claim against Dr. Shekir.

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss with prejudice Plaintiff's claims against Saint Francis Hospital, Rutgers Health Care, and Northern State Prison. The Court will dismiss without prejudice Plaintiff's claim against Dr. Shekir. With respect to Plaintiff's claim against Dr. Shekir, Plaintiff may file an amended complaint to attempt to cure the above noted deficiencies. An appropriate Order follows.

DATED: August 18, 2021

Julien Xavier Neals
United States District Judge